ORAL ARGUMENT NOT YET SCHEDULED

## No. 14-5030

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CHIQUITA BRANDS INTERNATIONAL, INC.,

*Plaintiff-Appellant*,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

*Defendant-Appellee*,

NATIONAL SECURITY ARCHIVE,

*Intervenor-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

## BRIEF FOR PLAINTIFF-APPELLANT
## CHIQUITA BRANDS INTERNATIONAL, INC.

Mark H. Lynch
James M. Garland
Mark W. Mosier
Ashley M. Sprague
Jaclyn E. Martínez Resly
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004–2401
(202) 662–6000

*Counsel for Plaintiff-Appellant*
*Chiquita Brands International, Inc.*

June 16, 2014

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 8(a)(4), 26.1, and 27(a)(4), Plaintiff-Appellant Chiquita Brands International, Inc. states as follows:

**A.     Parties, Intervenors, and Amici:**  The parties to this appeal are Plaintiff-Appellant Chiquita Brands International, Inc., Defendant-Appellee U.S. Securities and Exchange Commission, and Intervenor-Appellee National Security Archive.  There are no other parties or *amicus curiae* at this time.

Chiquita Brands International, Inc. has no parent company, and no publicly held company owns ten percent or more of its stock.

**B.     Rulings Under Review:**  The rulings under review are the District Court's Memorandum and Opinion and Order (Hon. Richard J. Leon), entered on November 20, 2013, denying Chiquita's motion for summary judgment and granting the SEC's motion for summary judgment.  JA 436-47.

**C.     Related Cases:**  This case was not previously before this Court or any other court.  To counsel's knowledge, no similar case is currently pending in this Court or in any other court.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF CONTENTS......................................................................... ii

TABLE OF AUTHORITIES ................................................................ vi

GLOSSARY...................................................................................... ix

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ..................................................... 3

STATEMENT OF ISSUES ................................................................ 4

STATEMENT OF THE CASE............................................................ 4

      A.     FOIA Exemption 7(B)....................................................... 4

      B.     The Archive's FOIA Requests and the ATS Litigation ...................... 6

      C.     The SEC's Refusal to Withhold Chiquita Documents Under Exemption 7(B) ................................................................. 10

      D.     The District Court Proceedings ....................................... 12

SUMMARY OF ARGUMENT ............................................................ 14

STANDARD OF REVIEW ................................................................ 16

ARGUMENT ................................................................................... 18

I.     FOIA EXEMPTION 7(B) AUTHORIZES AN AGENCY TO WITHHOLD DOCUMENTS WHERE THEIR RELEASE WOULD AFFECT THE FAIRNESS OF JUDICIAL PROCEEDINGS, INCLUDING PRETRIAL DISCOVERY. ................................... 18

      A.     Exemption 7(B) Is Not Limited to Protecting a Party's Right To Trial by an Impartial Jury, But Rather Ensures Fairness Throughout Judicial and Administrative Proceedings. ...................... 19

      B.     The SEC's Flawed Interpretation Would Render Exemption 7(B) Superfluous. ............................................................... 24

II.    THE SEC ERRONEOUSLY DETERMINED THAT EXEMPTION
       7(B) DOES NOT APPLY TO THE DOCUMENTS AT ISSUE
       HERE. ......................................................................................................... 26

       A.    The SEC's Decision Is Unlawful Because It Is Based on the
             Agency's Flawed Interpretation of Exemption 7(B) ......................... 27

       B.    The SEC's Decision Is Unlawful Because the Agency Ignored
             Significant Aspects of How Releasing the Documents Would
             Interfere with the ATS Litigation. .................................................... 29

CONCLUSION .................................................................................................... 35

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001)......................................................17

*Brewer v. Williams*, 430 U.S. 387 (1977)...............................................................21

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).................................21, 22

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).......................................................16

*Clinton v. Jones*, 520 U.S. 681 (1997)....................................................................29

*Dickerson v. United States*, 530 U.S. 428 (2000) ...................................................26

*Doe v. Exxon Mobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007)....................................30

*FCC v. AT&T Inc.*, 131 S. Ct. 1177 (2011) .......................................................17, 20

*Holland v. Nat'l Mining Ass'n*, 309 F.3d 808 (D.C. Cir. 2002) ........................18, 27

*Kansas v. Ventris*, 556 U.S. 586 (2009)...................................................................21

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .............................................................29

*Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29 (1983) .........................18, 29

*Napue v. Illinois*, 360 U.S. 264 ...............................................................................26

*Nat'l Ass'n of Mfrs. v. S.E.C.*,
    No. 13-5252, 2014 WL 1408274 (D.C. Cir. Apr. 14, 2014) ..............................18

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976).............................................26

*Occidental Petroleum Corp. v. SEC*, 873 F.2d 325 (D.C. Cir. 1989) ....................16

*PPG Indus., Inc. v. United States*, 52 F.3d 363 (D.C. Cir. 1995).....................28, 29

*Peretz v. United States*, 501 U.S. 923 (1991) ..........................................................23

---

[*] Authorities on which this brief chiefly relies are marked with an asterisk.

*In re Rafferty*, 864 F.2d 151 (D.C. Cir. 1988) ........................................................34

*Reporters' Comm. for Freedom of Press v. DOJ*,
  816 F.2d 730 (D.C. Cir. 1987)...........................................................................17

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)....................................32, 33, 34

*SEC v. Chenery*, 332 U.S. 194 (1947) ....................................................................35

*Singh v. Clinton*, 618 F.3d 1085 (9th Cir. 2010) .............................................27, 28

*Skilling v. United States*, 561 U.S. 358 (2010) ...................... 12, 15, 18, 24, 25, 26

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)......................................................30

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997)................................................17

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001)..............................................................24

*DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749 (1989) ................25

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)...........................23

*United States v. Smith*, 77 F.3d 511 (D.C. Cir. 1996) ............................................26

*Washington Post Co. v. U.S. Dep't of Justice*,
  863 F.2d 96 (D.C. Cir. 1988)................................... 2, 3, 6, 11, 14, 15, 19-24, 26

**Statutes, Regulation, and Rule**

Act to Amend Section 552 of Title 5, United States Code, Known as
  the Freedom of Information Act,
  Pub. L. 93-502, 88 Stat. 1561 (1974) ................................................................4

*Freedom of Information Act,
  5 U.S.C. § 552..........................................................................................2, 4, 5, 22, 25

5 U.S.C. § 706.................................................................. 16, 17, 24, 27, 28, 29

28 U.S.C. § 1291 ......................................................................................................3

28 U.S.C. § 1331 ......................................................................................................3

28 U.S.C. § 1350 ..................................................................1, 7, 8

17 C.F.R. § 200.83 ......................................................................6

*Fed. R. Civ. P. 26 ................................................... 8, 11, 16, 27, 32-34

## Other Authorities

*Black's Law Dictionary* (10th ed. 2014)....................................................22

*Dep't of Justice, Attorney General's Memorandum on the 1974
   Amendments to the Freedom of Information Act 8 (1975),
   *reprinted in* House Committee on Government Operations and
   Senate Committee on the Judiciary, *Freedom of Information Act
   and Amendments of 1974 (P.L. 93–502) Source Book: Legislative
   History, Texts, and Other Documents*, 94th Cong., 1st Sess., 507,
   518 (Jt. Comm. Print 1975) ..................................................5, 20, 23

Sedona Conference, *The Sedona Guidelines: Best Practices
   Addressing Protective Orders, Confidentiality & Public Access in
   Civil Cases*, 2 Reynolds Cts. & Media L. J. 47, 55 (2012) ................................33

Charles Alan Wright, et al., *Federal Prac. & Proc.* § 2036 (3d ed.)
   (2012) .........................................................................29, 33

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| ATS | Alien Tort Statute, 28 U.S.C. § 1350 |
| Banadex | Chiquita's former Colombian subsidiary C.I. Bananos de Exportación, S.A. |
| DOJ | U.S. Department of Justice |
| FOIA | Freedom of Information Act |
| JA | Joint Appendix |
| SEC | U.S. Securities and Exchange Commission |

## INTRODUCTION

Plaintiff-Appellant Chiquita Brands International, Inc. ("Chiquita") is a defendant in litigation involving more than 6,000 plaintiffs asserting claims under the Alien Tort Statute, 28 U.S.C. § 1350.  The plaintiffs are Colombian citizens who assert claims based on alleged killings and acts of torture committed by Colombian paramilitary and guerilla groups, and seek to hold Chiquita liable because its former Colombian subsidiary, Banadex, made extortion payments to these armed groups.  Allowing the plaintiffs to conduct discovery on these claims would have significant foreign policy implications, as the acts of violence allegedly occurred in Colombia with the assistance of the Colombian government.  Given the extraordinary discovery required and the uncertainty as to whether the ATS confers subject-matter jurisdiction over the claims, the district court has certified for interlocutory appeal its orders denying Chiquita's motions to dismiss.  The court has stayed all discovery throughout the litigation.

In 2012, Defendant-Appellee U.S. Security and Exchange Commission ("SEC") informed Chiquita that, pursuant to requests under the Freedom of Information Act ("FOIA"), the agency intended to release documents that Chiquita had produced in connection with SEC investigations.  The documents identified as responsive to the FOIA requests included thousands of pages of information that is central to the claims in the ATS litigation, including detailed information regarding

the Banadex extortion payments.  The overlap between the FOIA requests and the ATS litigation is no coincidence:  The requests were submitted by Intervenor-Appellee National Security Archive ("Archive") in collaboration with the ATS plaintiffs.

Chiquita requested that the SEC withhold the documents from disclosure pursuant to FOIA Exemption 7(B), which protects from disclosure documents compiled for law enforcement purposes that, if released, "would deprive a person of a right to a fair trial or an impartial adjudication."  5 U.S.C. § 552(b)(7)(B).  As Chiquita pointed out to the SEC, this Court has interpreted Exemption 7(B) to authorize an agency to withhold documents if their release would interfere with the fairness of judicial proceedings, and the Court has expressly recognized that this standard would be satisfied where "disclosure through FOIA would furnish access to a document not available under the discovery rules." *Washington Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 102 (D.C. Cir. 1988).  Exemption 7(B) applied to the documents at issue, Chiquita argued, because their disclosure would interfere with the ATS litigation by permitting the plaintiffs to circumvent the court's order staying discovery, avoid mutual disclosure obligations, and obtain access to the documents without Chiquita having an opportunity to seek a protective order.

The SEC concluded that Exemption 7(B) did not apply.  In the agency's view, the exemption applies only if a party establishes that releasing the documents

2

would result in adverse pretrial publicity so pervasive that it would render any future trial unfair, and Chiquita had not made this showing.

The SEC's decision to release the documents is contrary to law because it is based on the SEC's flawed interpretation of Exemption 7(B). Interpreting the exemption to apply only when a party can show that disclosure would render any future trial unfair is contrary to the statutory text, conflicts with this Court's decision in *Washington Post*, and would make the exemption a dead letter. The SEC's decision is also arbitrary and capricious and an abuse of discretion because the agency failed to account for the significant degree to which releasing the documents would interfere with discovery in the ATS litigation. The agency's action should therefore be held unlawful and set aside.

## JURISDICTIONAL STATEMENT

Chiquita brought this action under the Administrative Procedure Act ("APA") to set aside and declare unlawful final agency action by the SEC. The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. On November 20, 2013, the district court issued an opinion and order granting the SEC's motion for summary judgment. Joint Appendix ("JA") 436-47. Chiquita timely filed a notice of appeal on January 16, 2014. JA 448-49. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      Whether FOIA Exemption 7(B), 5 U.S.C. § 552(b)(7)(B), applies to documents, the disclosure of which would cause unfairness to a party during the pretrial discovery stage of a case.

2.      Whether the SEC's decision to disclose the documents at issue was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law because the SEC applied the wrong legal standard and failed to take into account the ways in which disclosure would interfere with the fairness of discovery proceedings in ongoing litigation and the ability of the trial judge to manage those proceedings.

## STATUTES AND REGULATIONS

The relevant statutory provisions are reproduced in the Addendum to this brief.

## STATEMENT OF THE CASE

### A.      FOIA Exemption 7(B)

In 1974, Congress amended FOIA to specify six grounds on which an agency could withhold its investigatory files.[1]  The exemption at issue here, Exemption 7(B), protects "records or information compiled for law enforcement purposes," the disclosure of which "would deprive a person of a right to a fair trial or an im-

---

[1] *See* Act to Amend Section 552 of Title 5, United States Code, Known as the Freedom of Information Act, Pub. L. 93-502, 88 Stat. 1561 (1974).

4

partial adjudication." 5 U.S.C. § 552(b)(7)(B). This exemption was added to the statute through a floor amendment, and the legislative history contains no discussion of the provision.[2]

In 1975, the Attorney General issued a memorandum providing the Department of Justice's views on the new FOIA exemptions. *See* A.G. Memo. at 507-571. For Exemption 7(B), the Attorney General noted that the "term 'trial' is undefined, but would normally be thought to apply to judicial proceedings, both civil and criminal, in Federal and State courts." *Id.* at 518. The exemption would also apply, in the Attorney General's view, to administrative proceedings. *Id.* The Attorney General recognized that Exemption 7(B) would "typically" apply "when requested material would cause prejudicial publicity." *Id.* at 519. But "[t]he provision is obviously aimed at more than just inflammation of jurors, however, since juries do not sit in administrative proceedings." *Id.* For example, Exemption 7(B) would apply, in the Attorney General's view, when "the release of damaging and unevaluated information . . . may confer an unfair advantage upon one party to an adversary proceeding." *Id.*

---

[2] *See* Dep't of Justice, Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act 8 (1975), *reprinted in* House Committee on Government Operations and Senate Committee on the Judiciary, *Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts, and Other Documents*, 94th Cong., 1st Sess., 507, 518 (Jt. Comm. Print 1975) ("A.G. Memo.").

5

In the first (and only) appellate court opinion interpreting Exemption 7(B), this Court followed the Attorney General's interpretation.  *See Washington Post*, 863 F.2d at 102.  The Court held that the exemption applies when (1) "a trial or adjudication is pending or truly imminent," and (2) "it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings."  *Id*.  In remanding the case to the district court, this Court provided examples of when material would "seriously interfere with the fairness of [judicial] proceedings."  *Id*.  As relevant here, the Court explained that release of documents "would confer an unfair advantage on one of the parties" when "disclosure through FOIA would furnish access to a document not available under the discovery rules."  *Id.*

### B.     The Archive's FOIA Requests and the ATS Litigation

In November 2008, the Archive submitted two FOIA requests to the SEC, seeking documents relating to investigations of Chiquita's operations in Colombia and to the finances of Chiquita's former Colombian subsidiary, Banadex.  JA 37, 40.  In connection with these investigations, Chiquita had produced a large volume of documents to the SEC, and had requested confidential treatment for those documents pursuant to agency regulations, 17 C.F.R. § 200.83.  *See* JA 44, 354-55.

Around the same time, the Archive also made a FOIA request to DOJ.  *See id.* at 95.  DOJ had obtained information from Chiquita—including many of the

same documents Chiquita provided to the SEC—in connection with a criminal in-

vestigation involving Banadex's payments to paramilitary groups in Colombia.

*Id.*[3]   In April 2011, without notifying Chiquita of the Archive's request, DOJ re-

leased certain documents that Chiquita had produced during the DOJ investigation.

*See id.* at 95-96.   Chiquita learned of this release when the Archive published those

documents on its website accompanied by a press release.   *See id.* at 120-21.   The

publication of these documents and press release resulted in news articles in the

United States and Colombia that painted a grossly inaccurate and skewed picture

of the facts surrounding Banadex's payments.   *Id.* at 114-15, 120-21, 146-47, 163.

When the Archive made its FOIA requests, Chiquita was already engaged in

civil litigation relating to Banadex's payments in Colombia.   Since 2007, more

than 6,000 Colombians have filed lawsuits against Chiquita in U.S. courts.   JA

160.   Relying principally on the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350,

these plaintiffs allege that, because of Banadex's payments to Colombian guerrilla

and paramilitary groups, Chiquita should be held liable for certain deaths and inju-

---

[3] Although Chiquita viewed the payments as extortion payments necessary to pro-
tect the safety of its Colombian employees, Chiquita ultimately entered into a plea
agreement with DOJ because Banadex had made payments to the AUC, a desig-
nated terrorist organization, without first obtaining a license from the U.S. Treas-
ury Department.   JA 142-43, 160.

7

ries inflicted by those groups. *See id.* at JA 60, 160-61.[4]  The suits have been cen-

tralized for coordinated treatment in a multi-district litigation proceeding in the

Southern District of Florida. *See In re: Chiquita Brands Int'l Inc., Alien Tort Stat-*

*ute & S'holders Derivative Litig.*, No. 0:08-md-01916-KAM (S.D. Fla.); *see also*

JA 60, 160.

For the past seven years, the parties have litigated threshold jurisdictional is-

sues, including whether the ATS confers subject-matter jurisdiction over the plain-

tiffs' claims, which are brought by Colombians for alleged international law

violations committed by Colombians in Colombia.  JA 161.  After holding that it

had jurisdiction, the district court certified its orders for interlocutory appeal to the

Eleventh Circuit, where the case is currently pending.[5]  Throughout the entire liti-

gation, discovery has been stayed. *See* First Case Mgmt. Order at 6, No. 0:08-md-

01916-KAM (S.D. Fla. June 2, 2008) (D.E. 67) (suspending "[a]ll Rule 26(f) obli-

gations"); *see also* JA 123-29, 161, 174-75.  As a result, Chiquita has not produced

any documents to the ATS plaintiffs.

---

[4]  Plaintiffs have also asserted claims under the Torture Victim Protection Act of
1991, 28 U.S.C. § 1350 note, various U.S. state tort laws, and Colombian laws.  JA
160; *see also* Op. and Order at 2, No. 0:08-md-01916-KAM (S.D. Fla. June 3,
2011) (D.E. 412).

[5] The appeal is fully brief and was argued on April 24, 2014. *See In re: Chiquita*
*Brands Int'l, Inc. Alien Tort Statute Litig.*, No. 12-14898-B (11th Cir.).

Despite the order staying discovery in the ATS litigation, lawyers for the ATS plaintiffs have collaborated with the Archive to seek documents through the FOIA requests at issue here.  The Archive has publicly acknowledged that it is assisting lawyers who serve as counsel for some of the ATS plaintiffs.[6]  Likewise, the ATS plaintiffs' counsel have acknowledged that the Archive's FOIA requests were part of a "fact development strategy" executed in "partnership" with the Archive.[7]  Through these FOIA requests, the Archive is thus attempting to assist the ATS plaintiffs in obtaining documents that, as a result of the discovery stay, the district court has made unavailable to them in the ATS litigation.  JA 143-44.

---

[6] *See* JA 87-88 (identifying Arturo Carrillo, the director of George Washington University Law School's International Human Rights Clinic, as counsel for certain plaintiffs); JA 163 (citing Archive's press release stating that "[t]he collection [of the Chiquita Documents] is the result of an Archive collaboration with George Washington University Law School's International Human Rights and Public Justice Advocacy Clinics [led by Mr. Carrillo] and has been used in support of a civil suit brought against Chiquita led by Earth Rights International on behalf of hundreds of Colombian victims of paramilitary violence"); *see also* About the Faculty, Int'l Human Rights Clinic, Geo. Wash. Univ. L. Sch., http://www.law.gwu.edu/ Academics/EL/clinics/IHRC/Pages/Faculty.aspx (last visited June 13, 2014).

[7] *See Current Docket: Clinic Docket 2012-13*, Int'l Human Rights Clinic, Geo. Wash. Univ. L. Sch., http://www.law.gwu.edu/Academics/EL/clinics/IHRC/Pages/ CurrentDocket.aspx (last visited June 13, 2014) ("the IHRC in 2008 initiated a fact development strategy in partnership with the National Security Archives at GW University to obtain case-related information from federal agencies through FOIA"); *id.* ("IHRC students have participated not only in the analysis of Chiquita-related documents received in response to our FOIA requests, but also in advancing our ongoing litigation strategy against federal agencies that are not cooperating in the timely production of requested information.  Currently, one such suit is pending against the SEC.").

**C.    The SEC's Refusal to Withhold Chiquita Documents Under Exemption 7(B)**

In early 2012, the SEC formally notified Chiquita of the Archive's FOIA requests.  JA 44-46.  On June 26, 2012, Chiquita submitted a letter explaining why the requested documents were exempt from disclosure.  JA 57-100.

Six months later, on December 14, 2012, the SEC's FOIA office issued a preliminary decision granting in part and denying in part Chiquita's request for confidential treatment.   JA 101-08.   As permitted by the SEC's regulations, Chiquita provided supplemental arguments in response to the preliminary decision.  JA 111-33.  On January 18, 2013, the SEC's FOIA office issued a final decision that affirmed its preliminary decision.  JA 134-38.

On January 28, 2013, Chiquita appealed the decision to the SEC's Office of the General Counsel.  JA 139-86.  Chiquita challenged the release of certain documents concerning the Banadex payments to armed groups in Colombia.  JA 140.  These documents include thousands of pages related to the payments, including documents identifying persons involved in making the payments, the amounts paid, the dates of the payments, and descriptions of the purposes of the payments.  *Id.* at 148-56.

As in its initial submissions to the FOIA office, Chiquita argued that the documents should be withheld under Exemption 7(B) because their release would interfere with the fairness of discovery in the ATS litigation.  JA 60-61, 112-13,

10

121-22.  Relying on *Washington Post*, Chiquita argued that public disclosure of the documents would confer an unfair advantage on the ATS plaintiffs by allowing them to (1) circumvent the court's order staying discovery; (2) obtain discovery without first complying with the mutual disclosure obligations imposed by Federal Rule of Civil Procedure 26(f), and (3) impair the court's authority to control discovery, including by issue a protective order under Rule 26(c) to restrict public dissemination of the documents.  JA 60-61, 112-13, 121-22.[8]

On March 8, 2013, the SEC General Counsel's Office affirmed the decision of the FOIA office.  JA 354-66.  As in the prior ruling, the agency concluded that Chiquita failed to establish that release of the documents at issue would "amount to deprivation of the right to a fair trial."  JA 362.  The agency acknowledged Chiquita's argument that releasing the documents would interfere with discovery in the ATS litigation, but concluded that any harm Chiquita would suffer in this regard would be insufficient to trigger Exemption 7(B) because "the harm [Chiquita] must be seeking to avoid is adverse pretrial publicity that is so severe as to render a trial unfair."  *Id.*

---

[8] Chiquita also argued that release of the documents would lead to adverse publicity that would interfere with its right to a fair trial in both the ATS litigation and in a criminal investigation in Colombia.  JA 113-15, 145-47.  Chiquita does not seek judicial review of those issues.

Noting that the case law interpreting Exemption 7(B) provides little guidance on when pretrial publicity is so pervasive as to render any future trial unfair, the SEC identified several factors to consider based on the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358, 361 (2010).  JA 363.  Under this approach, Chiquita was obligated to establish not only that release of the documents would lead to pervasive, adverse publicity, but also that, in a hypothetical future trial, the district court could not overcome the effects of this pretrial publicity by using "the usual judicial processes of jury selection such as screening questionnaires and *voir dire* . . . to ensure juror impartiality."  JA 364.  Because Chiquita did not provide "any reason to believe that a media campaign would produce prejudice of a nature and severity that cannot be cured by common judicial safeguards," Exemption 7(B) did not apply.  JA 364-65.

On March 28, 2013, the SEC denied Chiquita's motion for reconsideration and advised Chiquita that the agency would stay release of the disputed documents pending judicial review if Chiquita filed suit within five business.  JA 391.

### D.    The District Court Proceedings

On April 4, 2013, Chiquita filed a reverse-FOIA action against the SEC in the district court.  JA 5-18.  The Archive moved to intervene, and the district court granted the motion.  JA 19.  All three parties moved for summary judgment.

12

Chiquita argued that the SEC's decision was not in accordance with law because Exemption 7(B) protects against unfairness arising at the discovery stage—in and of itself and without reference to what may happen at trial. Chiquita also argued that the SEC's decision was arbitrary and capricious and an abuse of discretion because the SEC focused solely on how unfairness at the discovery stage would affect a possible future jury trial, and failed to take into account the ways in which disclosure would interfere with the fairness of discovery proceedings and the ability of the trial judge to manage those proceedings.

On November 20, 2013, the district court granted the SEC's motion for summary judgment and denied Chiquita's motion. JA 436-47. In its opinion, the district court did not address Chiquita's primary argument: that the SEC erred in interpreting Exemption 7(B) by refusing to recognize that the exemption protects against unfairness in discovery proceedings regardless of whether disclosure would cause unfairness at trial. Instead, the district court concluded that release of the documents would not confer an unfair advantage because Chiquita was willing to produce the documents to the ATS plaintiffs if the discovery stay were lifted. JA 442-43. The court also held that interference with the ATS court's ability to control discovery, including by issuing a protective order restricting public dissemination of the documents, was insufficient to trigger Exemption 7(B). *Id.* After

issuing this decision, the court summarily denied Chiquita's request for an injunction pending appeal.  JA 4.

On January 16, 2014, Chiquita filed a notice of appeal.  JA 448.  On April 23, 2014, this Court granted Chiquita's motion for an injunction pending appeal and denied the Archive's motion for summary affirmance.  JA 450.

## SUMMARY OF ARGUMENT

**I.**  The SEC interpreted Exemption 7(B) to apply only where releasing documents would result in adverse pretrial publicity so severe it will deprive a party of its constitutional right to trial by an impartial jury.  The agency's interpretation, which is entitled to no deference, conflicts with this Court's decision in *Washington Post*, and effectively reads Exemption 7(B) out of the statute.

**A.**  Exemption 7(B) is best read to protect the fairness of every stage of judicial and administrative proceedings.  The Attorney General's Memorandum does not interpret the exemption as limited to protecting the fairness of trials.  To the contrary, the Attorney General concluded that the exemption protects the fairness of "judicial proceedings," and expressly rejected the idea that Exemption 7(B) was aimed solely at protecting against jury impartiality.  This Court adopted the same interpretation in *Washington Post*.  Interpreting Exemption 7(B) to apply to a "broad range of . . . proceedings" and to protect the fairness of those proceedings, the Court expressly noted that the exemption would apply where "disclosure

14

through FOIA would furnish access to a document not available under the discovery rules." 863 F.2d at 102. This statement was not linked to unfairness at trial.

**B.** The SEC's contrary interpretation should be rejected because it would make Exemption 7(B) superfluous. The SEC interpreted the exemption to protect a party's constitutional right to trial by an impartial jury, but the APA already prohibits agency action that violates a party's constitutional rights. For it to have any effect, Exemption 7(B) must be read to provide protections beyond those already guaranteed by the Constitution. The SEC also rendered Exemption 7(B) meaningless by interpreting it to incorporate *Skilling*'s discussion of the presumption of juror impartiality, which the agency acknowledged will almost never arise. Given the difficulty in predicting the effect that releasing documents will have on a potential jury pool, the *Skilling* factors will likely never be present in a FOIA case.

**II.** The SEC's determination that Exemption 7(B) does not apply to the documents at issue here should be held unlawful and set aside.

**A.** The SEC's decision should be set aside as not in accordance with law because it is based on the agency's flawed interpretation of Exemption 7(B). Exemption 7(B) protects the fairness of each phase of judicial proceedings, including pretrial discovery. Yet the SEC determined that Exemption 7(B) did not apply here unless releasing the documents would deprive Chiquita of its constitutional right to trial by an impartial jury. Because the SEC applied the wrong legal stand-

15

ard in deciding whether to withhold documents under Exemption 7(B), its determination must be set aside and the matter remanded for consideration under the correct legal standard.

    **B.**    The SEC's decision should also be set aside as arbitrary and capricious and an abuse of discretion because the agency overlooked significant aspects of the unfairness that releasing the documents will have on discovery in the ATS litigation.  Releasing the documents will confer an unfair advantage on the ATS plaintiffs by: (1) allowing them to circumvent the court's order staying discovery; (2) providing access to documents not otherwise available without complying with their mutual disclosure obligations under Rule 26(f); and (3) providing access to the documents without providing Chiquita with the opportunity to seek a protective order limiting their dissemination.  The SEC's analysis fails to account for these concerns.

## STANDARD OF REVIEW

    The APA governs judicial review of agency action in reverse-FOIA cases. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 317 (1979).  Agency decisions to release records under FOIA "are in the nature of informal adjudications, and as such are reviewable under the generally applicable standards of [5 U.S.C.] § 706."  *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 337 (D.C. Cir. 1989) (internal citation and quotation marks omitted).  Under § 706, agency action is unlawful if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Under § 706, "the reviewing court shall decide all relevant questions of law [and] interpret constitutional and statutory provisions . . . ." 5 U.S.C. § 706. In a reverse-FOIA case, the agency's interpretation of FOIA receives no deference. *See FCC v. AT&T Inc.*, 131 S. Ct. 1177 (2011) (construing meaning of Exemption 7(C) in reverse-FOIA case without according any deference to agency). That is because FOIA applies to all government agencies, and Congress has not delegated interpretive authority to any particular agency. *See Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001) ("[I]t is precisely because FOIA's terms apply government-wide that we generally decline to accord deference to agency interpretations of the statute, as we would otherwise do under *Chevron* . . . .") (citation omitted).[9] As a result, this Court should interpret Exemption 7(B) *de novo*, according no deference to the SEC's construction of the statute.

While the Court cannot "substitute its judgment for that of the agency," the agency's action is arbitrary and capricious and an abuse of discretion if it did not

---

[9] *See also Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997) ("[W]e will not defer to an agency's view of FOIA's meaning" because "[n]o one federal agency administers FOIA."); *Reporters' Comm. for Freedom of Press v. DOJ*, 816 F.2d 730, 734 (D.C. Cir. 1987) (declining to accord *Chevron* deference to Justice Department interpretation of FOIA exemptions because FOIA "applies to all government agencies, and thus no one executive branch entity is entrusted with its primary interpretation"), *rev'd on other grounds*, 489 U.S. 749 (1989).

"examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (internal citation and quotation marks omitted).

"In a case like the instant one, in which the District Court reviewed an agency action under the APA, we review the administrative action directly, according no particular deference to the judgment of the District Court." *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 814 (D.C. Cir. 2002); *see also Nat'l Ass'n of Mfrs. v. S.E.C.*, No. 13-5252, 2014 WL 1408274 (D.C. Cir. Apr. 14, 2014).

## ARGUMENT

### I.    FOIA EXEMPTION 7(B) AUTHORIZES AN AGENCY TO WITH-HOLD DOCUMENTS WHERE THEIR RELEASE WOULD AFFECT THE FAIRNESS OF JUDICIAL PROCEEDINGS, INCLUDING PRETRIAL DISCOVERY.

Before the SEC, Chiquita invoked Exemption 7(B) on the ground that release of documents concerning Banadex's payments to armed groups in Colombia would compromise the fairness of pretrial discovery in the ATS litigation. In rejecting this argument, the SEC interpreted Exemption 7(B) to apply only when a party is seeking to avoid "adverse pretrial publicity that is so severe as to render a trial unfair." JA 362. To determine whether this requirement was met, the agency looked to the Supreme Court's decision in *Skilling*, which addressed the circumstances in which pretrial publicity is so pervasive that a motion for change of ven-

ue must be granted because juror bias may be presumed.  JA 363.  Concluding that

Chiquita failed to show that its constitutional right to trial by an impartial jury

could not be protected through jury selection in a future trial in the ATS litigation,

the SEC determined that Exemption 7(B) did not apply.  JA 364-65.

This Court should reject the SEC's overly narrow interpretation of Exemption 7(B) and reaffirm the view expressed in the Attorney General's Memorandum and this Court's decision in *Washington Post*.  Under that view, Exemption 7(B)'s protection is not limited to instances in which potential juror bias is likely to deprive a party of its constitutional right to a fair trial.  Instead, the exemption protects a party during all phases of judicial proceedings and prevents release of documents where release would confer an unfair advantage on a party.

> **A.     Exemption 7(B) Is Not Limited to Protecting a Party's Right To Trial by an Impartial Jury, But Rather Ensures Fairness Throughout Judicial and Administrative Proceedings.**

Neither the Attorney General's Memorandum nor this Court's decision in *Washington Post* interprets Exemption 7(B) to protect only a party's constitutional right to trial by an impartial jury.  To the contrary, both recognize that the exemption applies to the entire judicial proceeding and would protect against a release of documents that would compromise the fairness of discovery in civil cases.  The Court should reaffirm that interpretation here.

Shortly after Exemption 7(B) was enacted, the Attorney General interpreted it to apply to all "*judicial proceedings*, both civil and criminal, in Federal and State courts," as well as to administrative proceedings. A.G. Memo. at 518 (emphasis added).[10] Given that the exemption applies to proceedings that do not involve a jury, the Attorney General noted that "[t]he provision is obviously aimed at more than just inflammation of jurors." *Id.* at 519. In the Attorney General's view, regardless of whether the release of particular documents would impact jury selection, Exemption 7(B) applies if the release would "confer an unfair advantage upon one party to an adversary proceeding." *Id.*

Relying extensively on the Attorney General's Memorandum, this Court adopted the same interpretation of Exemption 7(B) in *Washington Post*, 863 F.2d at 102. The Court agreed with the Attorney General that Exemption 7(b) applies to "a wide variety of persons and proceedings." *Id.* Like the Attorney General, the Court did not interpret Exemption 7(B) to apply only when juror impartiality is at issue. Instead, the Court noted the Attorney General's view that the exemption would also apply "to prevent disclosures from conferring an unfair advantage upon one party to an adversary proceeding." *Id.* at 101. Consistent with this view, the Court provided an example of how a party could obtain an unfair advantage during

---

[10] The Supreme Court has recognized that the Attorney General's Memorandum provides "reliable guidance in interpreting FOIA." *AT&T*, 131 S. Ct. at 1185.

discovery:  "It may be that disclosure through FOIA would furnish access to a document not available under the discovery rules and thus would confer an unfair advantage on one of the parties."  *Id*.  at 102.

Both *Washington Post* and the Attorney General's Memorandum sensibly recognize that the "right to a fair trial" ensures fairness throughout the entire judicial proceeding.  This view is consistent with the Supreme Court's decisions interpreting the scope of the constitutional right to a fair trial, which have held that the right can be violated both before and after trial.  For example, to ensure that a criminal defendant receives a fair trial, the Sixth Amendment provides the defendant with a right to counsel.  *See, e.g.*, *Brewer v. Williams*, 430 U.S. 387, 424-25 (1977).  Despite recognizing that the right to counsel is "fundamentally a 'trial' right," the Supreme Court has repeatedly held that the right protects a defendant during certain "pretrial confrontations."  *Id*.  In reaffirming its view that "[t]he core of the right to counsel is indeed a trial right," the Supreme Court recently made clear that this "trial right" can be violated even before a trial begins.  *Kansas v. Ventris*, 556 U.S. 586, 591 (2009); *see also id.* at 592 ("The constitutional violation occurs when the [pretrial] uncounseled interrogation is conducted.").

Just as a constitutional trial right can be violated before trial, the Supreme Court has also held that a party's right to a fair trial can be violated after trial.  In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Court relied on a par-

21

ty's right to a fair trial to ensure the fairness of post-trial appellate proceedings. *Id.* at 876 (invoking the principle that "[a] fair trial in a fair tribunal is a basic requirement of due process" to hold that a state supreme court justice may not hear an appeal if his impartiality could be reasonably questioned). As these cases demonstrate, *Washington Post* and the Attorney General's Memorandum correctly interpreted Exemption 7(B)'s reference to a "right to a fair trial" as demonstrating Congress's intent to protect judicial proceedings in their entirety, not simply the trial phase of those proceedings.

In any event, even if the term "right to a fair trial" could be construed to ensure only that the trial itself would be fair, Exemption 7(B) would still apply to protect the fairness of pretrial proceedings. That is because Exemption 7(B) also protects a party's right to an "impartial adjudication." 5 U.S.C. § 552(b)(7)(B) (protecting disclosure where it "would deprive a person of a right to a fair trial or an impartial adjudication"). The ordinary meaning of the term "adjudication" is "the process of judicially deciding a case." *Black's Law Dictionary* 50 (10th ed. 2014); *see also id.* (defining "adjudication" as "[t]he legal process of resolving a dispute"). Because pretrial proceedings are plainly part of the "process" of deciding a case, they fall within the scope of the protections proved by Exemption 7(B).

Common usage of the term "impartial adjudication" confirms the point. In fact, both the Supreme Court and this Court have used the term to discuss a party's

22

rights in judicial proceedings. *See, e.g.*, *Peretz v. United States*, 501 U.S. 923, 929 n.6 (1991) (noting "Article III, § 1's guarantee of an independent and *impartial adjudication* by the federal judiciary of matters within the judicial power of the United States" (quotation marks and citation omitted; emphasis added); *United States v. Microsoft Corp.*, 253 F.3d 34, 116 (D.C. Cir. 2001) (discussing "Microsoft's right to an impartial adjudication").[11]

In short, *Washington Post* and the Attorney General's Memorandum correctly interpret Exemption 7(B) to apply to "judicial proceedings," including pretrial discovery, and to authorize the government to withhold documents from a FOIA request where release of the documents would confer an unfair advantage on one of the parties. As this Court recognized in *Washington Post*, Exemption 7(B) protects against the unfairness that would arise if "disclosure through FOIA would furnish access to a document not available under the discovery rules." 863 F.2d at 102.

---

[11] Although "adjudication" is defined in the APA, the Attorney General's Memorandum concluded that Congress did not intend for Exemption 7(B) to incorporate this definition. *See* A.G. Mem. at 518. Rather, the Attorney General concluded that "adjudication" should be read broadly to bring a wide array of administrative determinations within Exemption 7(B). *Id.* As the dictionary definitions discussed above demonstrate, the ordinary meaning of "adjudication" not only includes quasi-judicial administrative proceedings, but also judicial proceedings.

23

### B.     The SEC's Flawed Interpretation Would Render Exemption 7(B) Superfluous.

According to the SEC, even when Exemption 7(B) is invoked on the ground that disclosure would confer an unfair advantage during discovery, "the harm [the party] must be seeking to avoid is adverse pretrial publicity that is so severe as to render a trial unfair."  JA 362.  To determine whether adverse pretrial publicity is sufficiently severe to trigger Exemption 7(B), the SEC applied *Skilling*'s analysis for deciding whether the potential for juror bias was so great that a motion for change of venue should have been granted.  JA 363-64.

The SEC's interpretation of Exemption 7(B) makes it superfluous.  If a party can make the showing required by the SEC here—that release of documents would violate its constitutional rights—then, even without Exemption 7(B), it could challenge the agency's action under the APA.  *See* 5 U.S.C. § 706(2)(B) (agency action must be held unlawful and set aside if it is "contrary to constitutional right").  Exemption 7(B) must therefore be interpreted—as *Washington Post* and the Attorney General's Memorandum have construed it—to provide protections broader than those guaranteed by the Constitution.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or

24

word shall be superfluous, void, or insignificant." (internal quotation marks and citation omitted)).[12]

Moreover, by interpreting Exemption 7(B) to incorporate certain factors discussed in *Skilling*, the SEC effectively read the exemption out of the statute. In the portion of *Skilling* on which the SEC relied, the Supreme Court discussed only the circumstances in which adverse pretrial publicity is so pervasive that it gives rise to a presumption of juror impartiality and thus requires a change of venue. JA 363-65. As the SEC recognized, this presumption will almost never arise because "'extensive screening questionnaires and *voir dire* are almost always adequate to determine potential jury impartiality.'" JA363 (quoting *Skilling*, 130 S.Ct. at 1915).[13] Given that the presumption did not arise in the circumstances presented in *Skilling*—where the significant adverse publicity has already occurred—it surely will never arise in the circumstances presented here: where the pervasiveness of the

---

[12] Interpreting Exemption 7(B) to provide protection no broader than existing constitutional protections is also inconsistent with the Supreme Court's interpretation of other FOIA exemptions. For example, Exemption 7(C) authorizes the government to withhold documents where disclosure could "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In interpreting this provision, the Supreme Court did not limit its application to constitutionally protected privacy interests, but instead construed the exemption broadly based on "common-law and dictionary understandings" of privacy. *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 767 (1989).

[13] Although the agency purported to quote *Skilling*, the quoted language does not appear in the Supreme Court's decision. The Supreme Court, however, did acknowledge that the presumption will arise only in "extreme" cases. 561 U.S. at 381.

publicity is unknown because the information has not yet been released.  *Cf. Ne-braska Press Ass'n v. Stuart*, 427 U.S. 539, 562-63 (1976)  (predictions regarding the effect of pretrial publicity on prospective jurors, before the publicity has arisen, are "of necessity speculative" because they depend on "factors unknown and un-knowable").[14]

In sum, the Court should reject the SEC's interpretation of Exemption 7(B) as applying only where a party can demonstrate that releasing documents would result in such pervasive, adverse pretrial publicity that juror impartiality may be presumed.  That interpretation not only conflicts with *Washington Post* and the At-torney General's Memorandum, but would render the exemption superfluous.

## II.    THE SEC ERRONEOUSLY DETERMINED THAT EXEMPTION 7(B) DOES NOT APPLY TO THE DOCUMENTS AT ISSUE HERE.

Relying on this Court's decision in *Washington Post*, Chiquita urged the SEC to withhold documents concerning Banadex's payments to armed groups in Colombia under Exemption 7(B).  As Chiquita explained, release of these docu-

---

[14] The SEC's interpretation is also overly narrow because the constitutional right to a fair trial is considerably broader than the right to an impartial jury at issue in *Skilling*.  The right can be violated on numerous grounds unrelated to jury bias, includ-ing issues relating solely to evidentiary matters.  *See, e.g.*, *United States v. Smith*, 77 F.3d 511, 517 (D.C. Cir. 1996) ("The prosecutor's obligation to disclose mate-rial information to the defense is a fundamental component of the guarantee that criminal defendants receive fair trials." (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)); *Dickerson v. United States*, 530 U.S. 428, 435 n.1 (2000) (defendant must "be accorded a fair trial free from coerced testimony"); *Napue v. Illinois*, 360 U.S. 264 (government's knowing use of false testimony deprives defendant of right to fair trial).

ments to the Archive would confer an unfair advantage on the ATS plaintiffs, who were acting in concert with the Archive, by allowing them to (a) circumvent the court-issued discovery stay; (b) gain access to documents not otherwise available except through discovery without complying with their mutual disclosure obligations under Rule 26(f); and (c) gain access to the documents without any of the restrictions that the district court may impose through protective orders on disclosure of discovery materials. JA 142-45, 342-44.

The SEC's determination that Exemption 7(B) does not apply should be held unlawful for two reasons. *First*, the decision is not in accordance with law because it is based on the SEC's flawed interpretation of the statute. *Second*, the decision is arbitrary and capricious and an abuse of discretion because it ignores critical ways in which release of the documents would interfere with the ATS litigation. Each of these errors provides an independent basis for setting aside the agency's action.

### A.    The SEC's Decision Is Unlawful Because It Is Based on the Agency's Flawed Interpretation of Exemption 7(B).

Agency action must be held unlawful and set aside if it is "not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is satisfied where the agency has relied on an incorrect interpretation of the governing statute. *See Holland*, 309 F.3d at 812 (D.C. Cir. 2002); Edwards, Federal Standards of Review XV (noting that "[t]here are times . . . when the 'not in accordance with law' standard under Section 706(2)(A) is applied apart from arbitrary and capricious review"); *Singh v.*

27

*Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010) ("Whether agency action is 'not in accordance with law' is a question of statutory interpretation, rather than an assessment of reasonableness in the instant case.").[15]

The SEC's application of Exemption 7(B) is not in accordance with law because it is based on the agency's flawed interpretation of the statute. The SEC concluded that Exemption 7(B) did not apply because "the harm [Chiquita] must be seeking to avoid is adverse pretrial publicity that is so severe as to render a trial unfair," and Chiquita did not provide "any reason to believe that a media campaign would produce prejudice of a nature and severity that cannot be cured by common judicial safeguards." JA 362-65. As discussed above, this interpretation of Exemption 7(B) is incorrect, because the exemption protects against unfairness throughout judicial proceeding, including pretrial discovery, and is not limited to protecting the right to a trial by an impartial jury. *See supra* Part I.

Because the SEC's determination is premised on its flawed interpretation of the statute, its decision must be set aside and the matter remanded for the agency to apply the correct standard in the first instance. *See PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an

---

[15] This approach is consistent with Section 706's general rule that "the reviewing court shall decide all relevant questions of law [and] interpret constitutional and statutory provisions . . . ." 5 U.S.C. § 706.

error of law, the court's inquiry is at an end: the case must be remanded to the

agency for further action consistent with the corrected legal standards.").

**B.     The SEC's Decision Is Unlawful Because the Agency Ignored Significant Aspects of How Releasing the Documents Would Interfere with the ATS Litigation.**

By interpreting Exemption 7(B) to apply only if release of documents would

render any future jury trial unfair, the SEC overlooked the various ways in which

releasing the documents at issue would prejudice the fairness of pretrial discovery

in the ATS Litigation.  Because the SEC "entirely failed to consider an important

aspect of the problem," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, its decision

must be reversed as arbitrary and capricious and an abuse of discretion.

*First*, the SEC failed to acknowledge the extent to which release of docu-

ments concerning Banadex's payments to armed groups in Colombia will allow the

ATS plaintiffs to circumvent the court's discovery stay and its inherent authority to

manage discovery in the proceedings.  *See* JA 61, 112, 144, 342-44.  This impact is

significant.  A court has broad discretion to stay discovery proceedings as part of

its authority to control the discovery process in a litigation.  8A Charles Alan

Wright, et al., Federal Practice & Procedure § 2036 (3d ed. 2013); *Clinton v.

Jones*, 520 U.S. 681, 706 (1997).  The decision to issue a stay involves an "exer-

cise of judgment, which must weigh competing interests and maintaining an even

balance."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

29

The SEC's failure to address whether release of the documents will undermine the district court's stay is particularly problematic given the nature of ATS litigation.  Because ATS cases have the potential to interfere with U.S. foreign policy, the Supreme Court has instructed district courts to proceed with "great caution" in ATS cases, noting that claims must be "subject to vigilant doorkeeping." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004).  Indeed, in ATS litigation in this Circuit, the U.S. State Department has expressed  concern that "the nature, extent, and intrusiveness of discovery" could "adversely affect U.S. foreign policy." *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 354 (D.C. Cir. 2007) (internal quotation marks omitted).

The ATS litigation at issue here perhaps presents these concerns to a greater extent than any other ATS case.  The district court is not simply managing a single ATS case, but rather is overseeing a multidistrict litigation proceeding involving more than 6,000 claims.  JA 160; *see also In re Chiquita Brands Int'l, Inc. Alien Tort Statute & Shareholder Derivative Litig.*, No. 08-md-1916-KAM (S.D. Fla.).  The discovery necessary to litigate these claims, which would include discovery into each of more than 6,000 alleged killings and acts of torture in Colombia, would be, in the district court's words, "extraordinary."   Order Granting Defs.' Mot. for Certification of Interlocutory Appeal at 4-5, No. 08-md-1916-KAM (S.D. Fla. Mar. 27, 2012) (D.E. 518).  Under these circumstances, the district court con-

30

cluded that, before it allows 6,000 plaintiffs to conduct discovery, the Eleventh Circuit should review whether the ATS confers jurisdiction over the claims.

There can be little doubt that releasing the documents at issue here undermines the court's decision to stay discovery. That is especially true given that the Archive's FOIA requests were submitted in collaboration with the ATS plaintiffs' attorneys. JA 61, 112-13, 144, 342-44. Rather than addressing how releasing the documents would interfere with the discovery order, the SEC instead focused on Chiquita's statement that, if discovery were eventually allowed, it would be prepared to make the documents available to the plaintiffs at the appropriate time and after seeking a protective order. JA 361-62, 442. Based on this statement, the SEC stated that "Chiquita does not assert that these documents are privileged or otherwise unavailable under the discovery rules." JA 362. That statement was patently incorrect, as the discovery stay plainly made the documents unavailable under the discovery rules. Moreover, Chiquita's willingness to comply with its discovery obligations in the future – assuming that they ever arise (which they may not if the Eleventh Circuit holds that the ATS claims should be dismissed) – does not cure the immediate effect on the fairness of the discovery proceedings that would result if the documents are released while the stay remains in place.

*Second*, the SEC wholly ignored the fact that releasing the documents would result in the inequitable and asymmetrical timing of discovery of information,

which will give the plaintiffs a significant advantage over Chiquita in the ATS liti-gation. JA 144, 148-56, 343. As Chiquita explained to the SEC, once the docu-ments are released, the ATS plaintiffs will have access to thousands of pages of documents that discuss or relate to the payments underlying their claims, including documents identifying persons involved in making the payments, the amounts paid, the dates of the payments, and descriptions of the purposes of the payments. JA 148-56. Meanwhile, the more than 6,000 plaintiffs suing Chiquita will have no duty to satisfy their mutual disclosure obligations under Rule 26(f). *Id.* at 160-61. This unfairness to Chiquita is compounded by the fact that Chiquita cannot con-duct any investigation of the claims asserted by approximately half of the more than 6,000 plaintiffs because those plaintiffs are suing Chiquita under pseudonyms. *See, e.g.*, Does 1-144 Third Am. Compl. ¶¶ 20-1125, *In re Chiquita Brands Int'l, Inc., Alien Tort Statute & S'holders Derivative Litig.*, No. 08-md-01916-KAM (S.D. Fla. Sept. 24, 2012) (D.E. 575). Giving the ATS plaintiffs a head start on developing the facts and assessing their claims, while Chiquita remains in the dark, *even as to the identity of the plaintiffs*, is clearly an unfair advantage.

*Third*, the SEC ignored the difference between production of the documents in the ATS litigation and public release of the documents under FOIA. Discovery in civil litigation is "conducted in private as a matter of modern practice." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Unlike FOIA requesters, litigants

do not have "an unrestrained right to disseminate information that has been obtained through pretrial discovery," even where there is a public interest in the information gained in discovery. *Id*. at 31; *see also* The Sedona Conference, *The Sedona Guidelines: Best Practices Addressing Protective Orders, Confidentiality & Public Access in Civil Cases*, 2 Reynolds Cts. & Media L. J. 47, 55 (2012) ("There is no presumed right of the public to participate in the discovery process or to have access to the fruits of discovery that are not submitted to the court."). Federal Rule of Civil Procedure 26(c) recognizes a court's broad authority to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." 8A Charles Alan Wright, et al., *Federal Prac. & Proc.* § 2036 (3d ed.) (2012); Fed. R. Civ. P. 26(c)(1). The purpose of Rule 26(c) is to prevent abuse of the discovery process, such as the public release of information that could be damaging to reputation and privacy. *Seattle Times Co.*, 467 U.S. at 34-35.

No similar protections against sharing documents with the general public exist under FOIA. For example, the Archive has previously released to the public numerous other Chiquita documents that it obtained through a separate FOIA request to DOJ along with blatant mischaracterizations of their content. *See* JA 120-21, 163-64. Additionally, although individual names were redacted from those documents pursuant to certain FOIA exemptions, the Archive speculated on the au-

thors of several documents and then published the names of those individuals as purported facts for the entire world to see. *See* The Chiquita Papers, National Security Archive (Apr. 7, 2011), *available at* http://www2.gwu.edu/~nsarchiv/NSAEBB/NSAEBB340/ (last accessed June 13, 2014).

Such abuse of information would not happen in the ordinary course of civil litigation where protective orders can limit pretrial public disclosure of documents obtained through discovery. However, if the SEC releases the documents at issue here, Chiquita will lose the opportunity to obtain the protections of protective order because the district court cannot restrict the use and dissemination of materials obtained outside of discovery. *See Seattle Times Co.*, 467 U.S. at 34, 37; *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988) (vacating protective order restricting dissemination of documents obtained outside of discovery).

The SEC ignored this harm that Chiquita and other individuals would suffer and instead focused solely on the harm of pretrial publicity so severe as to render a trial unfair. *See* JA 362. But pretrial publicity so severe as to render a trial unfair is plainly different from pretrial publicity that would justify entry of a protective order under Federal Rule of Civil Procedure 26(c).[16]

---

[16] The district court stated that Chiquita did not "specifically articulate" how releasing the documents would confer an unfair advantage upon plaintiffs during discovery. JA 442. That statement is squarely refuted by the administrative record, which demonstrates that Chiquita repeatedly articulated, with specificity, the ways in which release of the documents would interfere with discovery. JA 142-45,

Because the SEC failed to consider the harms that would result if the documents at issue are released, its decision should be set aside and the matter remanded for consideration of the full extent of the harm that releasing the documents will inflict.

## CONCLUSION

The SEC's determination that Exemption 7(B) does not apply is arbitrary and capricious, an abuse of discretion, and contrary to law because it improperly limited the exemption to protecting against juror bias and failed to consider the unfairness in the discovery proceedings that would result if the SEC releases the documents at issue.  Accordingly, the SEC's decision should be set aside as unlawful, and the matter should be remanded for the agency to reconsider Chiquita's request for confidential treatment under the correct legal standards.

---

342-44.  In any event, the district court's characterization of the administrative record cannot help the SEC because the agency did not base its decision on any purported deficiencies in how Chiquita articulated its harm.  *See SEC v. Chenery*, 332 U.S. 194, 196 (1947).

Respectfully submitted,

 /s/  Mark W. Mosier
Mark H. Lynch
James M. Garland
Mark W. Mosier
Ashley M. Sprague
Jaclyn E. Martínez Resly
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
(202) 662-6000
mlynch@cov.com
jgarland@cov.com
mmosier@cov.com

*Counsel for Chiquita Brands*
June 16, 2014                    *International, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,456 words, excluding the portions of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

/s/ Mark W. Mosier

# ADDENDUM

## 5 U.S.C. § 552. Public information; agency rules, opinions, orders, records, and proceedings

**(a)** Each agency shall make available to the public information as follows:

\* \* \*

**(b)** This section does not apply to matters that are--

\* \* \*

  **(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

    **(A)** could reasonably be expected to interfere with enforcement proceedings,

    **(B)** would deprive a person of a right to a fair trial or an impartial adjudication,

    **(C)** could reasonably be expected to constitute an unwarranted invasion of personal privacy,

    **(D)** could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,

    **(E)** would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or

    **(F)** could reasonably be expected to endanger the life or physical safety of any individual;

\* \* \*

## CERTIFICATE OF SERVICE

I, Mark W. Mosier, counsel for appellant and member of the Bar of this Court, certify that on June 16, 2014, I electronically filed the foregoing Brief for Plaintiff-Appellant Chiquita Brands International, Inc. with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the registered CM/ECF users listed below.

Thomas J. Karr
Sarah E. Hancur
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612

Michael T. Kirkpatrick
Adina H. Rosenbaum
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009

/s/     Mark W. Mosier